929 F.2d 693
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Frances McCLELLAND, Individually and in her capacity as
personal representative of the Estate of Richard
L. McClelland, deceased, Plaintiff-Appellant,
v.
GOODYEAR TIRE & RUBBER COMPANY, An Ohio Corporation,
Defendant-Appellee,
United Rubber, Cork, Linoleum, & Plastic Workers of America,
AFL-CIO, CFC, Local Union 26, Amicus Curiae.
William Franklin LASHBAUGH, Mary Alice Lashbaugh,
Plaintiffs-Appellants,
v.
GOODYEAR TIRE & RUBBER COMPANY, An Ohio Corporation,
Defendant-Appellee,
United Rubber, Cork, Linoleum, & Plastic Workers of America,
AFL-CIO, CFC, Local Union 26, Amicus Curiae.
Alverda M. SPATARO, Individually and in her capacity as
personal representative of the Estate of John
Spataro, deceased, Plaintiff-Appellant,
v.
GOODYEAR TIRE & RUBBER COMPANY, An Ohio Corporation,
Defendant-Appellee,
United Rubber, Cork, Linoleum, & Plastic Workers of America,
AFL-CIO, CFC, Local Union 26, Amicus Curiae.
Thelma BARGER, Individually and in her capacity as Personal
Representative of the Estate of John B. Barger,
deceased, Plaintiff-Appellant,
v.
GOODYEAR TIRE & RUBBER COMPANY, An Ohio Corporation,
Defendant-Appellee,
United Rubber, Cork, Linoleum, & Plastic Workers of America,
AFL-CIO, CFC, Local Union 26, Amicus Curiae.
Ardtha D. RICHARDS, Individually and in her capacity as
Personal Representative of the Estate of John W.
Richards, deceased, Bradley J. Richards,
Plaintiffs-Appellants,
v.
GOODYEAR TIRE & RUBBER COMPANY, An Ohio Corporation,
Defendant-Appellee,
United Rubber, Cork, Linoleum, & Plastic Workers of America,
AFL-CIO, CFC, Local Union 26, Amicus Curiae.
Carl R. JEWELL, Plaintiff-Appellant,
v.
GOODYEAR TIRE & RUBBER COMPANY, An Ohio Corporation,
Defendant-Appellee,
United Rubber, Cork, Linoleum, & Plastic Workers of America,
AFL-CIO, CFC, Local Union 26, Amicus Curiae.
 Nos. 90-3087, 90-3090 to 90-3094.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 7, 1991.
Decided March 25, 1991.
As Amended May 6, 1991.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CA-87-2622-S; CA-89-891-S; CA-89-892-S; CA-89-893-S; CA-89-898; CA-89-3235-S).
 Martin Henry Freeman, Freeman & Richardson, Bethesda, Md., for appellant.
 Benjamin R. Civiletti, Venable, Baetjer & Howard, Baltimore, Md., (Argued), for appellee; James K. Archibald, Jeffrey A. Dunn, Venable, Baetjer & Howard, Baltimore, Md., Kenneth C. Bass, III, Venable, Baetjer & Howard, McLean, Va., on brief.
 R. Roger Drechsler, Weaver, Bendos and Bennett, Baltimore, Md., for amicus curiae.
 D.Md., 735 F.Supp. 172.
 AFFIRMED.
 Before PHILLIPS, MURNAGHAN and NIEMEYER, Circuit Judges.
 PER CURIAM:
 
 
 1
 The plaintiffs are former employees or survivors of employees of Kelly-Springfield Tire Company, a one-time tire manufacturing company which is a wholly owned subsidiary of defendant Goodyear Tire & Rubber Company. Following settlement which had terminated similar claims on behalf of forty-seven families whose heads of household were production workers in the Kelly-Springfield plant in Cumberland, Maryland, actions were brought on behalf of twelve other workers (or their survivors) against Goodyear in 1987 and 1988 alleging that they had sustained cancer and heart disease as a result of workplace exposure to toxic chemicals and that Goodyear was liable for those injuries. Suit in tort against Kelly-Springfield has been precluded, no doubt because of the exclusivity aspects of workers' compensation provisions relating to occupational diseases and injuries. Md.Ann.Code art. 101 Secs. 15 and 22. Some plaintiffs, at least, appear to have sought workers' compensation from Kelly-Springfield but such attempted recovery apparently was without success.
 
 
 2
 The original forty-seven claims had been settled. See Heinrich v. The Goodyear Tire & Rubber Company, 532 F.Supp. 1348 (D.Md.1982). The present group of cases began with six of the actions filed in November 1987. The remaining six additional cases followed, and were consolidated at the district court level with the first six.
 
 
 3
 Goodyear requested discovery limited to the issue of causation, and following discovery, Goodyear moved for summary judgment.
 
 
 4
 The magistrate judge recommended denying the motion as to the negligence and fraud counts and granting it as to the strict liability in tort and warranty counts. Plaintiffs and defendant each filed written objections and responses. The court also raised sua sponte the issue of statutory employer immunity under the Workers' Compensation Law, Md.Ann.Code art. 101, Sec. 15 (1900), and requested and received additional memoranda on the issue. The court then granted Goodyear's Motion for Summary Judgment on all tort claims asserted and also because of statutory employer status. Plaintiffs have appealed the summary judgment.
 
 
 5
 Finally, additional cases, of a similar nature, were instituted during the proceedings below. The trial court ordered those cases stayed pending the outcome of the Motion for Summary Judgment. Upon the granting of summary judgment, Goodyear moved for summary judgment on the five stayed cases; and the plaintiffs opposed. The district court granted the motion, whereupon appeals were noted. On appeal, the five stayed cases were consolidated with the first twelve.
 
 
 6
 From the point of view of the lawyers representing the plaintiffs, it was necessary to attempt to hew a very thin and at times virtually imperceptible line. On the one hand, a suit in tort against Kelly-Springfield was not feasible because of the workers' compensation bar.[1] Even if the likelihood of workers' compensation awards against Kelly-Springfield might have been strong, they potentially, being considerably less in amount than tort judgments would afford, if they were recoverable, might well be markedly less attractive to the plaintiffs. Suing in tort would lead them to be hopeful of settling or gaining judgment for more than workers' compensation would provide. Although workers' compensation assures the receipt of something and a workers' compensation claim would not be barred because of the existence of suit against a third party, still it might, as a practical matter, force the injured employee to abandon the opportunity for a greater award that may come with a successful tort recovery. In all events, the case as brought for the plaintiffs appears to have been a case of tort claims or nothing.
 
 
 7
 Yet avoiding the workers' compensation limitations on one side caused them to arise on the other. A decision to seek tort recovery from Goodyear, the wholly owning parent, would have been balanced on one side by the availability to Goodyear, since it would be a tort claim, of defenses, primarily absence of causality, not available to an employer covered by workers' compensation. Md.Ann.Code art. 101, Sec. 15 (1990). On the other side, if the wholly owning parent enjoyed statutory employer status for purposes of workers' compensation things would have gone full circle.
 
 
 8
 Here it appears not to have been attractive for the plaintiffs to attempt to play it both ways by suing KellySpringfield, as employer, under workers' compensation and trying to hold Goodyear, as an independent third party, in tort. The fact that any workers' compensation recovery would have to be allowed as a credit in calculating any tort recovery, Md.Ann.Code art. 101 Sec. 58 ("when third party liable"), would make workers' compensation unattractive assuming the tort award would exceed in size the workers' compensation award.
 
 
 9
 Whatever the reasons behind the decision to sue in tort, in doing so the tort plaintiffs still had to deal with two landmines which the plaintiffs had to succeed in skirting. First, among other defenses, the defense of lack of causation would have to be overcome to make out a viable claim in tort. Second, while it was incumbent on the plaintiffs to establish goodyear's responsibility in tort by showing that enough tort creating activity was under Goodyear's control, that result would have to be achieved without, at the same time, establishing such domination on Goodyear's part as to render it a statutory employer[2] and thus entitled to immunity under the workers' compensation law.
 
 
 10
 The plaintiffs have proffered a number of theories of tort liability on Goodyear's part. In addition to products liability, the theory that seems strongest is as follows. By both contract and conduct, the consolidated claims run, Goodyear undertook to provide to Kelly-Springfield expertise in matters pertaining to workplace safety, industrial hygiene, ventilation, toxic material handling and other such matters, and that Goodyear did so negligently, making it responsible for the plaintiffs' injuries. The claim against Goodyear rested on an alleged contract between Goodyear and Kelly-Springfield with a third-party beneficiary characteristic running to the benefit of the KellySpringfield workers. Restatement (Second) of Torts Sec. 324A (1965) ("One who undertakes ... to render services to another which he should recognize as necessary for the protection of a third person ... is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care.").
 
 
 11
 In the end, even giving full consideration to the plaintiffs' deposition testimony of experts, causation (evidence of particular practices causing the plaintiffs' injuries) has not been established sufficiently to withstand summary judgment, carrying the day for Goodyear. The plaintiffs failed to produce adequate evidence that the injuries to them resulted from Goodyear's activities rather than other causes. The torts asserted coalesce into furnishing various toxic-making chemicals to Kelly-Springfield without adequate concern for the health of Kelly-Springfield workers.
 
 
 12
 The absence of a preponderance of the evidence (or, indeed, of any evidence) that any particular, identifiable chemical supplied by Goodyear was a legal cause of the plaintiffs' injuries was the basis on which strict liability and breach of warranty claims were struck. The magistrate judge so recommended, the district court, after de novo review of the record, agreed, and we affirm.
 
 
 13
 Turning to the claims of negligence and fraud, the district judge concluded, and, upon investigation of the record, we concur[3] that a more likely than not finding that any particular, identifiable negligent or fraudulent conduct by Goodyear was the cause of the illnesses complained of could not be made. It was not the negligence or fraud which was in question, but the causation proceeding therefrom. Peterson v. Underwood, 258 Md. 9, 16-17, 264 A.2d 851, 854 (1970) ("We think plaintiff's proof was clearly sufficient to allow the jury to find that Norman negligently constructed and Christine failed to inspect the wall, and that Johnny's death was the result of the collapse of that wall. What we find to be a fatal defect in appellant Underwood's case is lack of any evidence causally linking defendants' negligence to the injury suffered."). Carcinogenic promoter and pulmonary irritant exposure characteristics of the toxic soup did not equate to causation of things done or undone or individual substances supplied by Goodyear.
 
 
 14
 On the basis of the foregoing determinations as to lack of proof as to causation, it is unnecessary to decide, and we abstain from deciding, the case on the alternative grounds that might be advanced by Goodyear, namely, that the workers' compensation exclusive remedy bars the action against it as KellySpringfield's wholly owning parent.[4] The fact that we would be concerned with manufacturing parent and manufacturing subsidiary perhaps brings to the fore special workers' compensation concerns. The extent of control of Kelly-Springfield by Goodyear might be a point meriting attention. Yet, piercing of the corporate veil is not done lightly.[5] Fraud had to have been established in the only case where piercing has been accomplished. Starfish Condominium Assoc. v. Yorkridge Service Corp., 295 Md. 693, 458 A.2d 805 (1983). It is perhaps unusual, if not novel, for piercing of the corporate veil to be advanced as a defense, rather than as grounds for attack. It is, however, not necessary to establish whether there was statutory employer status or not for Goodyear. It would win in either event.
 
 
 15
 Accordingly, the consolidated judgments are
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 The record does not unambiguously disclose whether workers' compensation claims, not in tort but under the statute, were pursued against Kelly-Springfield. There is an assertion in appellee's brief that the plaintiffs charged "Goodyear with total responsibility for the allegedly hazardous workplace environment." (Emphasis added.)
 
 
 [2]
 See Mackall v. Zayre Corp., 293 Md. 221, 443 A.2d 98 (1982), for the elements making out a statutory employer:
 
 
 [1]
 The power to select and hire the employee
 
 
 [2]
 The payment of wages
 
 
 [3]
 The power to discharge
 
 
 [4]
 The power to control the employee's conduct
 
 
 [5]
 Whether the work is part of the regular business of the employer
 Mackall, 293 Md. at 230, 443 A.2d at 103.
 
 
 [3]
 We are not impressed by a quibble which seeks to transform "impossible" as employed by the district judge to "impossible" in an abstract sense
 
 
 [4]
 Reliance by the plaintiffs, to escape such a defense, rests substantially on Dolan v. Kent Research & Mfg. Co., 63 Md.App. 55, 491 A.2d 1226, cert. denied, 304 Md. 298, 498 A.2d 1185 (1985), involving a subsidiary seeking to pierce the corporate veil. Goodyear would, of course, be a parent trying to do the same
 
 
 [5]
 Larson, The Law of Workmen's Compensation, 72.40 p. 14288.27 n. 34 ("The parent, having deliberately set up the corporate separateness for its own purposes, should not be heard to disavowthat separateness when it happens to be to its advantage to do so.")